UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

KRISTINE YOUNG,

    Plaintiff,

      v.                           Civil Action No.

WAL-MART STORES EAST, LP,

    Defendant.

COMPLAINT
JURY TRIAL REQUESTED
INJUNCTIVE RELIEF REQUESTED

NOW COMES the Plaintiff, Kristine Young ("Young"), by and through undersigned counsel, and complains against the Defendant, Wal-Mart Stores East, LP ("Walmart"), as follows:

INTRODUCTION

1.    This action arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*

PARTIES AND JURISDICTION

2.    Young is a United States citizen residing in Harrison, Maine.

3.    Defendant Wal-Mart Stores East, LP is a Delaware limited partnership with its principal place of business in Arkansas.

4.    Plaintiff and Defendant are citizens of different states for purposes of 28 U.S.C. § 1332.

5.    The amount of controversy in this case exceeds $75,000.

6.     This Court has subject matter jurisdiction over Plaintiff's federal and state law claims pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

7.     Venue lies in the District of Maine pursuant to 28 U.S.C. § 1391 because Plaintiff resides in Maine, Walmart is subject to personal jurisdiction in Maine, and many of the relevant facts to this case occurred in Maine.

8.     Defendant employed more than 500 employees during all calendar weeks of 2015 and 2016.

9.     Defendant employed more than 50 employees within seventy five miles of Plaintiff's workplace during all calendar weeks of 2015 and 2016.

10.    On or about May 26, 2016, Plaintiff filed a timely Charge of Discrimination with respect to the allegations herein with the Maine Human Rights Commission (MHRC) and the Equal Employment Opportunity Commission (EEOC).

11.    On or about May 9, 2017, the MHRC issued a Notice of Right to Sue to Plaintiff.

12.    On or about May 10, 2017, the EEOC issued a Notice of Right to Sue to Plaintiff.

13.    Plaintiff has exhausted all administrative remedies for purposes of each of her claims.

14.    At all material times, Defendant was Plaintiff's employer within the meaning of the ADA and MHRA.

## JURY TRIAL REQUESTED

15.    Young requests a trial by jury for all claims and issues for which a jury is permitted.

## FACTUAL ALLEGATIONS

16.     Walmart violated Young's rights under the ADA and MHRA by excluding her from work and refusing to reinstate her at the end of a medical leave of absence that she requested and needed for her disability.

*Background*

17.     Young was hired by Walmart to work in the Windham, Maine store (#2202) as a Deli Sales Associate and started working there in July 2006.

18.     Young was promoted to Lead Associate in October 2007.

19.     In August 2009, Young was promoted to Deli Department Manager.

20.     In 2010 Young was transferred to Bakery Department Manager.

21.     In March 2012, Young was promoted to Zone Merchandise Supervisor.

22.     In March 2014, Young was promoted to Assistant Manager.

23.     Young's history of regular promotions shows that her job performance was more than satisfactory.

24.     As of February 2017, Wal-Mart had 25 stores in Maine including 19 supercenters, 3 discount stores, and 3 Sam's Clubs as well as a distribution center.[1]

25.     In Maine during fiscal year 2017 Walmart collected $65,000,000 in taxes on behalf of the state of Maine as part of transactional sales of taxable goods and services and paid over $27,000,000 in taxes in connection with business conducted in Maine.[2]

26.     As of February 2017, Walmart employed more than 6,900 employees in Maine.[3]

27.     The Walmart Market (a/k/a District) in which Young worked during her entire employment with Walmart encompassed the 25 stores in Maine as well as a handful of additional

---

[1] http://corporate.walmart.com/our-story/locations/united-states/maine#/united-states/maine.
[2] *Id.*
[3] *Id.*

stores in New Hampshire and Vermont including a store in North Conway, New Hampshire (#2140).

28.     In August 2014, the North Conway, New Hampshire store (#2140) needed experienced help because they were expanding to a SuperCenter.

29.     Young was transferred to store #2140 because she was considered the "extra" Assistant Manager.

30.     Traci Witham was the Manager of store #2140.

31.     Katie Perez DeCato was the Co-Manager.

32.     Young was an Assistant Manager.  She was a full time, salaried employee making $38,938 per year.

33.     Young wanted to return to the Windham store #2202 and applied to go back there in February 2015. She applied for another transfer in July 2015 and that request was also ignored and denied.

34.     Walmart has taken the position that Young's request for a transfer back to Maine was denied because the request was made less than six months after she transferred to New Hampshire. This is not true. Young transferred to New Hampshire in August (not September) 2014 and asked to transfer back to Maine in February 2015, which was six months later.

*Young's Disability*

35.     In about February 2015, Young developed depression and anxiety. Her condition grew worse over the next few months and by June 2015 she went to her doctor for help. She was losing weight. She had trouble sleeping. She was tired, sad and tearful. She had feelings of worthlessness and trouble concentrating.  Young's doctor started her on medications including a low dose of Lexapro which she took every day. She had office visits every two weeks. She was not getting enough relief and her doctor increased her medications.

36. By August 2015, Young was much worse. She was nauseous and tearful and unable to function because of her anxiety. She felt like a zombie.

37. Young was unable to work due to mental illness from August 24 to 28, 2015.

38. Young saw her doctor on August 28, 2015 and her doctor recommended that Young take a medical leave of absence.

39. Young's depression and anxiety are disabilities for purposes of the ADA. These conditions substantially limit the major life activities of eating, sleeping, and concentrating, particularly when viewed in their unmitigated state.

40. Young had a record of disability and Walmart regarded Young as a person with a disability for purposes of the ADA.

41. Young's depression and anxiety were a serious health condition as defined by the FMLA. Her conditions required continuing treatment by her health care provider and she was unable to perform the duties of her job during the period for which she requested and required leave as a result of her conditions.

*Young's Request and Need for Reasonable Accommodation (Medical LOA)*

42. Young requested a medical leave of absence from September 2, 2015 to October 2, 2015.

43. Young provided completed FMLA paperwork to Walmart including a Certification of Health Care provider from her health care provider.

44. At the time that Young requested medical leave she had worked for Defendant for more than twelve months.

45. At the time that Young requested medical leave she had worked more than 1,250 hours in the prior twelve month period.

46.     Walmart approved the FMLA leave through October 2, 2015.

47.     On September 16, 2015, while she was on medical leave, Young exchanged text messages with the co-manager Perez DeCato:

Perez DeCato:  How did your appt go?

Young:  She wants me to follow up in 2 wks…go to counseling…this is worst battle i've had yet

Perez DeCato: I'm trying to be supportive…However my team has left me in a bad spot. Not only do I need to cover you and Mark I have inventory to do on my own on top of that. Do what you need too to get better…I just feel…well it wouldn't be appropriate to tell you how I feel so I'll leave it at that…Good luck.

48.     Young was understandably upset about Perez DeCato's message. Perez DeCato made a point of letting Young know that she was unhappy about Young needing and taking a leave of absence. Young felt harassed because she could not help the fact that she was ill.

49.     On September 17, 2015, Perez DeCato texted Young the following message:

"[Market Human Resources Manager] Wayne [Gottwald] is here. We haven't received any Loa paperwork. If you can give me a quick call please."

50.     Wayne Gottwald was the Market Human Resources Manager for the Walmart Market covering Maine and the handful of stores in New Hampshire and Vermont.

51.     Young was still upset about Perez DeCato's previous text message so she did not reply by text or telephone. She did however resend the paperwork to Gottwald via fax and to HRSS, which Young understood to be the corporate human resources department for Walmart.

52.     On September 18, 2015, Young used the fax machine at the Windham Walmart to fax the documents asking for an extension of her medical leave of absence. Young faxed the documents to Walmart HRSS and Market HR.

53.     Young's communication with Walmart on September 18, 2015 was appropriate and consistent with the requirements of the FMLA.

54.     On September 21, 2015, Store Manager Witham sent Young a text that read:

"Hey…could you just be straight with me? Are you coming back? If so, when?
I'd really like you to just be honest with me so we can both move forward"

55.     On about September 29, 2015, Walmart sent correspondence to Young that the documents completed by her doctor were allegedly missing or incomplete. She was asked to provide more information no later than October 9, 2015.

56.     Specifically, Young was asked to have her doctor indicate "yes" to the question about whether she was incapacitated for a continuous period of time, to provide leave dates, and indicate that Young was provided with treatment within seven days of the first date of absence.

57.     Young received this paperwork after her October 2, 2015 doctor visit.

58.     On October 2, 2015, Young's medical provider recommended that she extend her leave of absence until November 2, 2015 and wrote a letter indicating:

To Whom It May Concern:

For Medical reasons, please excuse the above named employee from work for the following dates:

Start: 2 Oct 2015
End: 2 Nov 2015

If you need additional information, please feel free to contact our office.
Sincerely,

Edward Enos FNP

59.     When Young received the paperwork from Walmart requesting more details, Young brought the paperwork to her doctor's office, Pondicherry Family Practice, provided the paperwork from Walmart requesting the additional details, and asked that they fax the requested information and documentation regarding Young's need for extended leave from November 2, 2015 to Walmart and provided the fax numbers for Walmart HRSS and Walmart's Market HR.

Young explained that the paperwork needed to be faxed to Walmart by October 9, 2015 and was assured that this would be done.

60.     Subsequently, Pondicherry Family Practice faxed documentation containing the details requested by Walmart as well as the request to extend the FMLA leave through November 2, 2015.

61.     These communications with Walmart complied with the FMLA requirements regarding clarification of certification and request for extension of FMLA leave.

62.     Young subsequently returned to Pondicherry Family Practice and obtained the original FMLA documentation that had been faxed to Walmart by Pondicherry Family Practice for her own records.

63.     On October 14, 2015, Walmart created documentation reflecting that Young's request for FMLA had been approved. This evidences that Walmart did receive the documentation from Pondicherry Family Practice containing the additional details and request for extension.

64.     Despite receiving documentation supporting the extension of Young's leave through November 2, 2015, Walmart did not approve an extended leave.

*Events Leading to Termination*

65.     On October 5, 2015, Young received another text from Witham that read:

"I need an answer Tina…when are you going to come back as you were released for the 2nd and on the schedule for this weekend."

66.     Young had already notified Walmart that she wanted an extension of her leave of absence until November 2, 2015.

67.     Young did not respond to Witham's texts because Witham was being hostile and because Young was communicating directly with HR about her leave of absence.

68.     By communicating with HR about her leave, Young was acting appropriately and consistent with the requirements of the FMLA.

69.     Young was terminated in a text message from Witham on October 15, 2015. The text message reads,

> "Tina at this point we're terminating your employment. In order to complete the final payout I'll need your keys and anything else belonging to Walmart. I truly hope you're ok, and things work out for you."

70.     On October 16, 2015, Young called HRSS to verify that they had received her FMLA paperwork containing the additional information requested and the request for the extension of leave through November 2, 2015.

71.     Young spoke to a man at HRSS.  He told Young they did not get the fax. Young asked if she could fax it again and he said yes.

72.     Young went to the Walmart store in Windham, Maine and re-faxed the FMLA paperwork with the additional details and the request for extending her leave through November 2, 2015 to HRSS and Market HR.

73.     Young assumed they got the faxes because the employee at HRSS did not call her back.

74.     Young was entitled to protected FMLA leave through November 2, 2015.  Young provided Walmart with adequate notice for the extension of her protected leave through November 2, 2015.

### *Walmart's Refusal to Correct So-called "Error" and/or Reinstate*

75.     On October 26, 2015 Young spoke to Gottwald by contacting Walmart's HRSS Human Resources number and asking to be transferred to Gottwald.

76.     During her October 26, 2015 call with Gottwald, Young told him that she felt wrongfully terminated.

77.     Gottwald told Young, "That's the wrong word, you were terminated per company policy."

78.     Young told Gottwald that nobody told her they did not get her faxes.

79.     Gottwald told Young that she should have responded to the text messages from Witham and Perez DeCato.

80.     Gottwald also told Young that he received a call from HRSS asking if he was going to reinstate her. Gottwald told Young that he told HRSS, "No, not at this time."

81.     Gottwald asked Young to confirm that she was able to return to work by November 2, 2015. She told him yes, she was going to come back.

82.     Gottwald told Young that he would talk to Market Manager Kevin Robinson and Witham about reinstating her.

83.     Gottwald did not call Young back.

84.     Walmart did not dispute the facts contained in paragraphs 75 through 83 in its submission to the MHRC.

85.     During the MHRC process, Plaintiff requested that Defendant produce documentation from the Market HR and HRSS offices regarding Young and her faxes and Walmart refused to provide the requested information.

*Further Proof of Discrimination and Retaliation*

86.     The Exit Interview form completed by Walmart for Young's termination indicates that the termination type was "voluntary termination" and that the reason was "job abandonment/three days unreported absence." In the comment section, someone wrote,

"Young went on an LOA in August and was scheduled to return Oct 2nd 2015. She never returned, and after 2 certified letters, many phone calls, and attempts to contact her. She has returned no form of contact, nor through a LOA. This is job abandonment, and she has failed to return her keys and any other company issued equipment."

87.    Walmart knows that Young did not abandon her job.

88.    It is false to say that Young "returned no form of contact" with Walmart.

89.    Young faxed and re-faxed medical documentation to Walmart at Market HR and HRSS in support of her request for FMLA and for an extension of her medical leave of absence through November 2, 2015.

90.    Upon information and belief, Walmart accommodated other employees who took medical leaves of absence that were for longer periods of time than Young's for physical (not mental) disabilities.

91.    For example, Mark, the other Assistant Manager, started a leave of absence in July 2015 for back impairment and was out for 12 weeks. Upon information and belief, Mark's FMLA paperwork was incomplete and/or never approved. Mark returned to work for a week and then had to go out on leave again due to a collapsed lung. Mark was on leave through October 2015 and was not terminated. This is evidence that Walmart held Young to a different and higher standard because she had a mental, not physical, disability.

92.    One of Walmart's stated reasons for terminating Young is that she did not respond to calls, text messages and certified letters. Young denies that she received any calls or certified letters to which she did not respond. Young admits that she did not respond to text messages from managers who expressed hostility toward Young for taking a medical leave of absence.  Young's communication with Walmart regarding her leave was completely consistent with the requirements of the FMLA.

11

93.     To the extent that Young violated some sort of policy by not responding to texts, the policy violation should have been addressed through coaching and progressive discipline, not termination.

94.     Walmart violated Young's prescriptive and proscriptive rights under the FMLA by terminating her while she was out on a protected leave, failing to reinstate her to her position at the conclusion of her leave, and retaliating against her by terminating her because of her need for and use of FMLA leave.

95.     Walmart terminated Young rather than provide her with the reasonable accommodation of medical leave until November 2, 2015 in violation of the ADA.

96.     Young was discharged from employment by Walmart due to disability discrimination.

97.     Young was discharged from employment by Walmart because she needed and requested a reasonable accommodation (medical leave of absence).

98.     It is undisputed that Young faxed documentation in support of her medical leave of absence through November 2, 2015 to Market HR and HRSS.

99.     In spite of this, Walmart failed to provide her with the accommodation of leave and refused to reinstate Young.

100.    Walmart's actions were motivated by disability discrimination and retaliation for Young's complaint of wrongful termination.

101.    If Walmart claims that it did not receive Young's paperwork on October 2, 2015 and October 17, 2015 due to some communication error or mistake, it would have been a reasonable accommodation for Walmart to reinstate Young to her position after October 26,

2015 when she explained to Gottwald that she had previously faxed the paperwork to them, multiple times.

102.    Walmart has a longstanding practice of terminating employees who require medical leave from work.[4]

103.    Walmart knowingly violated Young's rights under the FMLA.

104.    Walmart knowingly and willfully violated Young's rights under the ADA.

105.    Walmart unlawfully discriminated against Young with malice or reckless indifference to her rights.

106.    As a result of Walmart's unlawful discrimination against Young, she has suffered lost wages, lost benefits, loss of enjoyment of life, loss of self-esteem, injury to reputation, injury to career, humiliation, and other pecuniary and non-pecuniary losses.

107.    Young has no plain, adequate, or complete remedy at law to fully redress the wrongs alleged, and she will continue to suffer irreparable injury from her treatment by Walmart unless and until Walmart is enjoined by this court.

COUNT I: FMLA

108.    Paragraphs 1-107 are incorporated by reference.

109.    Walmart violated Young's prescriptive and proscriptive rights under the FMLA.

COUNT II: ADA<br>FAILURE TO ACCOMMODATE

110.    Paragraphs 1-109 are incorporated by reference.

111.    Hannaford violated the MHRA by failing to provide Pennington with reasonable accommodations for his disability.

---

[4] http://www.abetterbalance.org/pointingout/
https://www.nytimes.com/2017/06/01/business/walmart-workers-sick-days.html

## COUNT III: ADA
## UNLAWFUL DISCRIMINATION

112.    Paragraphs 1-111 are incorporated by reference.

113.    Walmart's conduct constitutes unlawful discrimination against Young in violation of the ADA.

## COUNT IV: ADA
## UNLAWFUL RETALIATION

114.    Paragraphs 1-113 are incorporated by reference.

115.    Walmart violated the ADA by retaliating against Young because she required and used medical leaves of absence as a reasonable accommodation for her disabilities and opposed practices made unlawful by the ADA.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

a)      Enter Judgment in Young's favor;

b)      Declare the conduct engaged in by Defendant to be in violation of her rights;

c)      Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate her rights;

d)      Order Defendant to employ Young in her former position or, in the alternative, award Young front pay and benefits;

e)      Award equitable-relief for back pay, benefits and prejudgment interest;

f)      Award compensatory damages in an amount to be determined at trial;

g)      Award punitive damages in an amount to be determined at trial;

h)      Award liquidated damages in an amount to be determined at trial;

i)      Award nominal damages;

j)      Award attorney's fees, including legal expenses, and costs;

k)      Award prejudgment interest;

l)      Permanently enjoin Defendant from engaging in any employment practices which discriminate on the basis of disability or use of protected medical leave;

m)      Require Defendant to mail a letter to all employees notifying them of the verdict and stating that Defendant will not tolerate discrimination in the future;

n)      Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

o)      Require that Defendant train all management level employees on the protections afforded by the MHRA and the ADA;

p)      Require that Defendant place a document in Young's personnel file which explains that Defendant unlawfully terminated her because of disability discrimination and retaliation; and

q)      Grant to Young such other and further relief as may be just and proper.


Dated:  June 23, 2017          */s/* Chad T. Hansen
                         chansen@maineemployeerights.com

                         */s/* Peter Thompson
                         pthompson@maineemployeerights.com


                         Attorneys for the Plaintiff

                         MAINE EMPLOYEE RIGHTS GROUP
                         92 Exchange Street 2nd floor
                         Portland, Maine 04101
                         Tel. (207) 874-0905
                         Fax (207) 874-0343